SAMUEL E. MASSEY *v.* THOMAS TURNER.

The endorsement in blank on the back of a negotiable promissory note, but not negotiated before the delivery of it to the payee, by one who has no interest in, nor connection with it apparent upon the face of it, but at whose instance and for whose benefit and accommodation it was drawn by the maker and handed to such person, who took it, wrote his name on the back of it, delivered it to the payee, and received from him the money for which it was given, the whole of which was applied with the understanding and consent of the maker at the time the note was drawn, to the use of such person in part payment of a larger sum due to him from the maker, will constitute such person an absolute and original promisor in the note, or a joint maker of it, and not a commercial endorser of it merely, according to the legal effect and technical import of that term ; and will render him absolutely liable in an action at the suit of the payee on the note against him, as an original promisor and joint maker of it, without proof of presentment to the sole apparent maker, and of due notice of its non-payment at maturity by him ; and not collaterally and conditionally liable only, on such proof, as a commercial endorser of it simply.

THE action below in this case was in the Superior Court for New Castle county, on a promissory note for $250, drawn and signed in the usual manner, by Thomas Deakyne, May 21st, 1856, and payable ninety days after date to the order of Samuel E. Massey, the plaintiff, and endorsed in blank on the back before the delivery of it to him, by Thomas Turner, the defendant in the action.

On the trial of the case in the court below, Thomas Deakyne, the maker of the note, was examined as a witness, and proved that he was indebted at the date of it to Thomas Turner, in a sum over two hundred and fifty dollars, and that the latter called upon him and requested him to pay him what he owed him, or as much of it as he could raise, as he then had special need of a portion of it at least, to which he replied that he had no money then that he could spare out of his business, but if he knew where he could borrow it, he would do so and let him have it. Turner then said he thought he knew where two hundred and fifty dollars could be borrowed, and asked him if such was the case and the money could be had, whether he would be willing to give his promissory note for it, and if so, he would endorse it, to which the witness assented. Turner then told him he thought that amount could be borrowed of Massey. By the request of the witness he then went to see Massey on the subject, and on his return informed him that the money could be obtained from him, and directed him to draw the note to the order of Massey for that amount and to sign it, and he would endorse it and take it to Massey and get the money on it. The witness then drew the note and signed it, but omitted to insert the days it was to run, and handed it to Turner, who immediately took it away with him, but soon after returned and told him that Massey said he had not inserted the time when it was to be paid, when he again looked at the note, found it was so, and directed him to take it back to Massey, and tell him to fix the time to suit himself, and he would call at his place of business in the evening and insert it. Turner then took it back to Massey, and in a short time returned again and said it was all right, and he had got the money on it. That evening he called upon Massey and directed him to insert the " ninety days after date " in it, which he then did in his presence, and that he observed at that time that the name of Thomas Turner was endorsed on the back of it, and in his own hand-

writing, and that he had so endorsed it before he received the money from Massey upon it; for he so stated to him when he came back after he had received the money, and that he had charged Turner with the amount of it in his account against him, for he had applied the whole of it to his own use, and no part of it had ever come into his hands. That a few days before the maturity of it, Massey had spoken to him about the payment or the renewal of it, and once or twice afterward, but had never pressed him for the payment of it until about a year after it had matured; and that Massey was still the holder of the note, and had never to his knowledge endorsed it to any one. The witness had failed in business in the month of September, 1857.

Upon this evidence and the facts disclosed in it, the counsel for the plaintiff contended that the defendant was absolutely bound as a joint maker of, and as an original promisor in the note, for the payment of it; whilst the counsel for the latter contended that his liability upon it had been but conditional only, as a mere endorser of the note in the technical sense of that term, and without due notice of the failure of Deakyne, the maker of it, to pay it at maturity, no action at law whatever could be maintained against him upon it.

After hearing the argument of counsel, the court below conceiving the question of law involved in the case of sufficient importance to be heard and decided before all the Judges in this court, with the consent of counsel, directed a special verdict of the jury to be taken according to the facts proved and above stated, and reserved the question of law presented, and ordered it to be heard in this court.

The declaration in the action was in assumpsit, and in addition to the common, contained two special counts, one against the defendant severally as sole maker of the note, and the other against him severally as a joint maker of it with Deakyne. The usual pleas were entered on behalf of the defendant.

*Whitely*, for the plaintiff: The promissory note in question was not a negotiable note in the true sense and meaning of that term, when Turner, the defendant, wrote his name upon the back of it, so as to give it the legal effect of a technical endorsement upon it, and could not have been, until Massey, the payee to whose order it was drawn, and the rightful holder of it, had endorsed, or written his name upon it, which he never did. This is therefore a suit between the original parties to it, and an action by the payee and original holder of it, against the defendant as one of the original and joint makers of it; for Turner was quite as much interested as Deakyne in obtaining the money from Massey upon it, and was even more active, and had more to do in devising and making the note from its inception, which was given for it. Even before it was completed and finally handed over to the payee, he received the whole of the money for which it was given and forthwith applied it to his own immediate demands, but strictly in accordance with the understanding and design of both Deakyne and himself at the time when it was made and the money was obtained upon it. It will be found that the principle of law applicable to cases like the present, is rather to interpret and explain the particular transaction without reference to the form merely which it may have assumed, so as best to effectuate the actual and substantial intention and design of the parties to the instrument, than by a strict and rigid adherence to a technical construction merely, to defeat their real object, and thus make it operate at once as a delusion and a snare to the ignorant and unwary. He should therefore contend, on the facts and circumstances found by the special verdict of the jury in this case, and thus briefly adverted to by him, that the defendant was, in point of law, as well as fact, a joint maker and an original promisor with Deakyne in the note, notwithstanding the mode in which he endorsed, or wrote his name upon the back of it, and that he was not, on the contrary, a mere endorser, or guarantor of it in a strictly legal and technical sense, inasmuch

as it was a matter of no substance, or importance on what part of the note the party subscribes, or signs his name, whether at the foot, on the margin, or upon the back of it, in a case like this, and it therefore furnished no rule or criterion, whatever, by which it was to be determined whether he was one of the original makers, or only an endorser, or guarantor of it. *Story on Prom. Notes. Secs.* 58, 467, 468, 469. *Moies v. Bird,* 11 *Mass.* 436. *Hunt v. Adams,* 5 *Mass.* 358. *White v. Howland,* 9 *Mass.* 314. *Sumner v. Gay,* 8 *Pick.* 311. *Oxford Bank v. Haines,* 8 *Pick.* 427. It is furthermore well ruled and settled by the general and almost uniform current of American decisions on the subject, that if the endorsement, or signature of the party, wherever it may occur upon the note, was made at, or near the time, as in this instance, of the making of it by the formal maker of it, the party so endorsing, or signing it, is to be considered and regarded as an original promisor and joint maker of it, but if it was not so signed, or endorsed until some time afterwards, he becomes only a guarantor, or endorser of it in the strictly legal and technical signification of those terms. *Austin v. Boyd,* 24 *Pick.* 64. *Irish v. Cutter,* 31 *Maine Rep.* 536. *Malbon v. Southard,* 36 *Maine Rep.* 147. *Sweetzer v. French,* 13 *Metcalf* 262, 2 *Cush.* 310. *Nelson v. Dubois,* 13 *Johns* 175. On the face of the note, as it was made and delivered by Deakyne to Massey's order, Turner was an entire stranger to it, and in contemplation of law as it then stood, he had no interest or property in it, and no negotiable power, or authority over it to transfer it by endorsement under his own hand. Massey, the payee, was the only party to it and the only person who possessed the power of so transferring it, or could by so doing, have become conditionally liable as an endorser upon it; and until he had done that, which he never did, no other person could have any legal right, or authority to endorse it in the true sense of that term, or could contract the peculiar and special obligation of a mercantile endorser merely by signing his name any where

upon it. This is an elementary principle of law in reference to such mercantile and negotiable instruments, so familiar and fundamental that it needs no argument, or authority to support it. And yet, not only the facts proved, clearly establish what he was about to say, but the mere fact, in the absence of such proof, that the defendant deliberately signed his name upon the back of the note, as clearly imported that he intended and expected to become bound thereby with Deakyne for the payment of it. But if so, in what character, or capacity was he to become so bound by it? That question the law must settle, even if the parties to it had had clearer apprehensions of what they were doing when the note was made, than they seemed to have had, and had intended to the contrary; for the technical rules, or principles of the law never yield, and are never subordinated to the vague, or mistaken conceptions of any parties. He had already shown from the cases cited, that the defendant could not be liable as an endorser on the note in the proper meaning of that term. There were no words accompanying his signature upon the note, and nothing in the case to constitute him a guarantor of it; and the conclusion he therefore thought was irresistible, that he could only be liable in the character in which he had been sued upon it in the action, and that was as an original promisor and joint maker with Deakyne in it.

*G. B. Rodney*, for the defendant. It was necessary that particular attention should be given to the facts proved in the case, for since the authorities cited on the other side very clearly show that what was intended at the time by the party endorsing the note is very material, it was only the more important in the present case to ascertain and consider what was intended by Thomas Turner, the defendant in this action, when he endorsed his name on the back of the note in question. The only question reserved and which we were to consider, was simply whether the defendant was liable as a joint maker, or as

an original promisor on the note; for all other questions as to his legal liability upon it, are waived in this suit.

Although it is true as a general principle of law, that a prior endorser of a promissory note cannot sue and recover from a subsequent endorser of it, there are cases to the contrary, and which constitute exceptions to the rule. *Bishop v. Hayward,* 4. *T. R.* 470, is a leading case to that effect. Upon the facts found in the case, if the defendant is liable at all, it could only be as an endorser, and not as a joint maker, or an original promisor in the note. *Seabury v. Hungerford,* 2. *Hill* 80, which was a case similar to the present, and in which it was so ruled. It is also a well settled principle of law, that where a party can be charged as an indorser, he cannot be liable in any other character, either as an original promisor, or as a guarantor of the note; for the commercial and negotiable quality of the paper forbids it. *Hall v. Newcomb,* 3. *Hill* 233, 7. *Hill* 416. It would have been quite an easy thing for the plaintiff, Massey, to have put the note in such a form by endorsing it himself over the name of Turner, the defendant, as to have made the latter liable to him as a second endorser upon it; and that it was in his power to do so, there can be no doubt. In the case of *Malbon v. Southard* cited on the other side, the defendant had added to his endorsement the words, "not to be responsible as endorser," which were inconsistant with his obligation, as endorser, nullified his character as such, and, of course, he became liable as an original promisor, and could not in such a case, have been liable in any other manner. And the same distinction and observation may be applied to the case of *Irish v. Cutter* cited on the other side. By the law merchant the signature of a party on the back of a negotiable instrument, or commercial paper, is an endorsement, and is nothing else; and by that law it was now well settled what constituted an endorser on such paper, and what were his obligations as such; and it was solely by virtue of that law, that his engagement was saved from and taken out of the operation of the statute

of frauds.  It is likewise well established by the same
law, as well as by the reason and nature of the thing it-
self, that when a party can be charged as an endorser, he
can not be charged in any other character.  But a depar-
ture from that rule and principle of law, so just and wise
in its policy, and so well understood in commercial circles,
at least, is liable to the further and. very grave objection
that it renders necessary the admission of parol evidence
to explain the meaning of written instruments and agree-
ments and the intentions of the parties to them, or to as-
certain, as in a case like the present, all the attendant
circumstances under which the note was given, the object
and relations of the parties at the time, all that was said
and all that was done by and between them, in order to
determine whether a certain person writing his name on
the back of such a note, is to be charged conditionally
only as an indorser upon it, or absolutely as a maker of
it.  This, as well as other very sound considerations, has
constrained the Courts in the State of New York to ad-
here to the rule of which he had been speaking, and to
decide the question presented in the case now before the
Court, when it has arisen there in conformity with it, and
to hold that the party signing in such cases, was only to
to be charged as an endorser merely, and not as a maker
of the note.  *Tilghman v. Wheeler,* 17 *Johns.* 326, *Dean v.
Hall,* 17 *Wend.* 214.  There was, it was true, some con-
flict between the decisions in that State and in Massa-
chusetts upon the question; but aside from the superior
wisdom and soundness which seemed to him, to character-
ize the rulings in the former State, it appeared to him
that our nearer proximity to that great commonwealth
and more general and closer commercial connections and
transactions with it, should incline us in doubtful cases at
least, to follow the decisions in the former, rather than in
the latter State.

*Whitely,* in reply, would simply say in answer to the
argument on the other side, that if the parties in this

case, had been well informed as to the proper and usual method of making and endorsing a promissory note to accomplish the object which they had in view, particularly as the proposition was first made by the defendant to Deakyne that the latter should borrow the money from Massey, and give him his promissory note for it, and that he should endorse it, they would have drawn it differently, and instead of making it payable to the order of the plaintiff, it would have been to the order of the defendant and by him endorsed to the plaintiff, and which according to the law merchant, would have constituted him an endorser of it simply, and render him of course, liable as such, and in no other manner. But this was not done.  On the contrary, the defendant took the note just as it came from the hands of Deakyne, wrote his own name on the back of it, delivered it to the plaintiff and obtained from him the money upon it, which he applied to his own use, according to the understanding of the parties at the time.  And this he contended constituted him not an endorser of the note in the contemplation of the law merchant, but a general surety for Deakyne to Massey for the payment of it by the former to the latter; or, in other words as it could not make him liable as an endorser in that sense, he must be liable as a joint maker with Deakyne of the note and as an original promisor upon it.

*Houston, J.*, announced the opinion of the Court.

The material facts presented in the case before us are as follows.  The promissory note in question was drawn by Deakyne, the formal and sole ostensible maker on the face of it, to the order of Massey the plaintiff, who has himself never endorsed, nor parted with it.  After it was thus drawn and signed by Deakyne, it was handed by him to Turner, the defendant, who wrote his name on the back of it, took it and delivered it to Massey and received the money on it from him.  It also appears that

he not only received the money of Massey on the note for which it was given, but that the loan was first proposed by him both to Deakyne and to Massey, and was cheifly, if not entirely negotiated by him, and that with the understanding and consent of Deakyne, he was to receive and apply to his own use the whole amount of the loan, in part payment of a larger sum due to him from Deakyne. It also further appears that the note was not even complete on its face, when the defendant wrote his name upon the back of it and delivered it to the plaintiff. As the note was drawn and signed by Deakyne, and before the defendant wrote his name upon the back of it, the latter had no interest or property, or right whatever, in or to it to be negotiated and transferred to any one by an endorsement of his name upon the back of it, according to commercial usage and the law merchant. It was not payable to his order, nor was his name any where written in, or upon it. About the time the note matured, something was said to Deakyne by the plaintiff, in regard to paying or renewing it; but neither was done, and there was no protest, and no notice of the nonpayment of it by Deakyne at maturity was served upon the defendant, so far as the facts appear from the special verdict of the jury returned in the court below. Deakyne failed in business about a year afterward. The plaintiff, the payee, is still the holder of the note, and this action is now brought by him to recover the amount of it from the defendant, not as an endorser of it in the legal and technical acceptation of that term, but as substantially a joint or co-maker of it with Deakyne, under the facts and circumstances just stated. And the question which we are called upon to decide is, whether the signature of Thomas Turner made by him on he back of the note, was a mercantile endorsement of it by him according to the legal effect and meaning of that term, so as to entitle him to due notice of its presentment for payment to Deakyne, the primary maker of it, and his failure to pay it at maturity before he could be made liable for the payment of it as an

endorser of it; or, on the other hand, whether he is absolutely bound to pay it under the circumstances, without such notice, as substantially a joint maker and an original promisor with Deakyne in the note. If he was an endorser of it merely, it is admitted that his engagement and liability upon it was but conditional and collateral in its character, and without such notice he would not be bound to pay it.

The decisions upon the question involved in similar cases in the courts of this country, have at least of late years, been to some extent conflicting; and into such an extreme nicety and refinement of distinction have some of the most recent cases particularly run, that if it is not altogether impossible to reconcile them, it is certainly the next thing to an impossibility to extract or eliminate from them any precise or definite rule for our guidance on this occasion. They certainly justify the concluding remark of Judge Story in his work on Promissory Notes in regard to them, that " whatever difficulty may be thought to exist in some of these cases, as to interpretations put upon the contract of the party, sought to be charged, the Courts will be found uniformly to have adopted that which, in their judgment, expounded truly the intention of all the parties thereto." *Story on Promissory Notes*, *sec.* 480. In the earlier cases however, there seems to be no discrepancy, or conflict in the decisions in the several States upon the question; for they all, with uniform tenor, hold, so far as we are informed, in a case like the present, of a negotiable promissory note, but not negotiated and endorsed in blank, as this was, that where the endorsement was by a stranger, that is to say, where the endorsement was by one who had no interest in, or connection with the note apparent upon the face of it, and the endorsement was made at, or about the time when the note was given, by such a person who was privy to, or had any interest, or participation in the consideration for which it was given, he may be considered and treated as an original promisor, or joint maker of

12

it, and is primarily and absolutely liable as such, for the payment of it. The endorsement in such a case not being considered to be a strict and literal endorsement, in the proper legal sense of that term. The following authorities will be found to warrant this conclusion. *Story on Prom. Notes, sec.* 476. *Tenney v. Prince,* 4 *Pick.* 385. *Baker v. Briggs,* 8 *Pick.* 122. *Bryant v. Eastman,* 7 *Cush.* 111. *Samson v. Thornton,* 3 *Metc.* 275. *Union Bank v. Willis,* 8 *Metc.* 504. *Austin v. Boyd,* 24 *Pick.* 64. *Adams v. Hardy,* 32 *Maine Rep.* 339, *Flint v. Day,* 9 *Vermont Rep.* 345. *Nash v. Skinner,* 12 *Vermont Rep.* 219. *Sylvester v. Downer,* 20 *Vermont Rep.* 355. *Martin v. Boyd,* 11 *New Hamp. Rep.* 385. *Leonard v. Wilkes,* 36 *Maine Rep.* 265. *Moies v. Bird,* 11 *Mass. Rep.* 436. *Hawks v. Phillips,* 7 *Gray's Rep. Herrick v. Carman,* 12 *Johns,* 159. *Nelson v. Dubois,* 13 *Johns,* 175. *Campbell v. Butler,* 14 *Johns* 349. And the principle of these authorities is still recognized and ruled in cases like the present in all the States from which they have been cited, except alone, we believe, in the State of New York, in which the later have materially modified, if they have not entirely overruled, their former decisions on the question. But the cases which we have just cited, have further ruled that if a person puts his name in blank upon the back of a negotiable promissory note payable to the order of another person, at the time when it is made, for the purpose of giving it credit and currency, he may be treated as an original promisor, or joint maker of the note, and will be bound absolutely for the payment of it; which in the absence of proof to the contrary, will be presumed, and so conclusive is such presumption, that it cannot be rebutted or controlled by parol evidence that the undertaking and intention of the parties was that he was to be a surety, or guarantor only, and not a joint maker of it. In the case of the *Essex Company v. the Executors of Reynor et al.* decided in the State of Massachusetts as late as the year 1858, it was held that where a person, not the payee, endorses a note before its delivery to the payee, he thereby becomes liable as an original

promissor; and that it is a conclusive presumption of law that a person endorsing a note under such circumstances, intends to become liable as a joint promisor, or maker, and therefore parol evidence is not competent to vary that liability and to show that the real agreement was that he was to be liable only as an endorser. *Story on Promissory Notes*, *Sec.* 476, *n.* 1. And the principle has been extended so far as to hold that if such an endorsement is made even a considerable time after the note was made and delivered to the payee, but in pursuance of an agreement entered into at the time of making the note, or where the party so endorsing was privy to, or had any interest, or participation in the consideration for which it was given, he is still to be considered as an original promisor, and is absolutely bound for the payment of it.

But in the case now before the Court it appears that the promissory note in question was endorsed in blank by the defendant, by simply writing his name on the back of it, and before it was fully made and delivered to Massey, the payee, that it was made at his own instance and suggestion and for his own special convenience and accommodation, that he took it and delivered it himself to the payee, the plaintiff, and thereupon received of him and immediately applied to his own use the whole amount of the $250 for which it was given. It is therefore it seems to us under all the facts and circumstances stated, a peculiarly strong case for holding him absolutely and unconditionally bound for the payment of it to the plaintiff, as an original promisor, or joint maker of the note, if we are to be guided and governed in the decision of it by the principle recognized and ruled in the numerous cases to which we have before referred, as well as in several others which might be cited, if we deemed it necessary, in support of it. But we do not deem that necessary. For we not only approve the principle ruled and established in those cases, but we think it safer to rely upon them than to attempt to follow and conform to the later New York cases, with the extremely nice and

subtle and almost imperceptible distinctions into which some of them have run in cases of this nature. But the rule there, as now established, it must be admitted, is just the reverse of the rule as we have stated it on the authority of the cases cited from other States. For the recent cases in that State have ruled that an endorsement in blank on the back of a negotiable note payable to the order of one person, by another at the time of making it and before the delivery of it to the payee, notwithstanding such endorser may be privy to, or interested in the consideration for which the note is given, is to be treated as a regular commercial endorsement, and in the absence of any special agreement, or proof of an intention to the contrary, it is to be legally presumed or inferred from the fact of his so endorsing his name in blank on the back of the note, that he intended to render himself liable collaterally and conditionally only, as a commercial endorser merely of the paper, and that he is consequently entitled to due notice of its presentment to the maker and of the non-payment of it by him, and without that he is not bound to pay it. In some of the cases cited, however, such as *Dean v. Hall*, 17 *Wend.* 214, and *Seabury v. Hungerford*, 2 *Hill* 80, the notes in question were made payable to bearer, in which perhaps, there would be less difficulty in recognizing the soundness of the ruling; because in such a case, it might well be presumed that the note was passed to the endorser for a consideration and was by him afterwards endorsed and delivered to the holder, the plaintiff, in which case he would be *prima facie* a commercial endorser of it merely; and it would be the same in such a case, even if he gave no consideration for it when he received it, but he endorsed it for the purpose merely of giving it additional credit. The cases, however, before alluded to, go beyond this, even to the extent, that when such an endorsement is made by another person, a friend of the sole ostensible maker, before delivery of the note to the payee, and for the benefit and accommodation of such third party, he is

to be considered and treated as a commercial endorser simply; and the decision in the case of *Hill v. Newcomb*, 3 *Hill* 233, has distinctly overruled the decisions in the earlier cases in that State on the question. But as we have before remarked, we are not aware that the decisions have gone to that extent in any other State.

The case of *Bishop v. Hayward*, 4 *T. R.* 470, has sometimes been referred to, as favoring that view of the question, and was cited in the present case by the counsel for the defendant, to show that it was in the power of Massey the plaintiff and payee in the note, to have put it in such a state by endorsing his own name upon it above that of the defendant's, as to have rendered the latter liable to him as a second endorser upon it, although as a general rule, or principle, a prior endorser of a promissory note is not liable to any subsequent endorser of it. But the remark of Lord Kenyon C. J. in that case which has been relied upon in support of this idea, was at best, but an *obiter dictum;* and yet, when properly apprehended, his words will not warrant any such interpretation of them. In that case the note was made by one Collins payable to the plaintiff, or order, by whom it was endorsed to the defendant and by the latter afterward endorsed back again to the plaintiff. It therefore presented the novel spectacle of a first endorser suing a second endorser on a promissory note, which the Court held could not be done. In delivering the opinion, Lord Kenyon, however, admitted "that a case might occur in which the plaintiff might have stated that he was substantially entitled to recover on this note, *e. g.* that his own name was originally used for form only, and that it was understood by all the parties to the instrument, that the note though nominally made payable to the plaintiff, was substantially to be paid to the defendant." If such had been the case presented to the Court, it would in effect have converted the defendant, the first endorser upon it, into the substantial payee of the note, and that in effect also would have made his endorsement substantially a commercial endorsement in

the strictest sense of the term, and substantially according to the hypothesis, as the first and only endorsement upon it, the preceding endorsement by the plaintiff upon it, for the sake of example and illustration being assumed to be for form only, and in that light, a mere nullity, for the purpose of maintaining the action and the right of the plaintiff to recover in it. Viewed in this aspect as a hypothetical case merely, we conceive that it is against, and not in favor of the principle for which it was cited.

But there is nothing in the present case to warrant the hypothesis, or assumption on which the dictum and admission of his Lordship in that case proceeded. Here the payee in the contemplation of all the parties concerned, was the real and substantial, and not a mere formal or fictitious payee in the note, who never endorsed it and has never parted with it, and there never was anything written over the name of the defendant on the back of it by the plaintiff, by leave of the Court below, or otherwise. On the contrary, it comes before us on the special verdict found by the jury and the question of law thereupon reserved and sent up from the Court below, just as it was on the day it was made by Deakyne, was signed on the back of it by the defendant and was delivered by him to the plaintiff; and the only question for us to consider and determine is, whether, under the facts and circumstances stated in the case, the defendant is absolutely liable upon it as an original promisor, or joint maker of the note, or is only collaterally and conditionally liable upon it as an endorser of it merely. For the reasons already stated at so much length, we do not think the signature of the defendant in this case on the back of the note in question, can be properly considered and treated as a commercial endorsement of it according to the legal import and technical signification of that term; but that he is absolutely liable upon it in the present action at the suit of the plaintiff, as an original promisor in it and joint maker of it, and that the plaintiff below therefore ought to recover. And this will accordingly be certified as our opinion in the case to the Court below.